## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BARTHOLOMESS ROBICHAUX** | **CIVIL ACTION** |
| **VERSUS** | **NO. 04-1945** |
| **BURL CAIN** | **SECTION "F" (2)** |

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary. See 28 U.S.C. § 2254(e)(2).[1] For the following reasons, I recommend that

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

the instant petition for habeas corpus relief be **DENIED** and the petition **DISMISSED**

**WITH PREJUDICE**.

I.      STATE COURT PROCEDURAL BACKGROUND

The petitioner, Bartholomess Robichaux, is incarcerated in the Louisiana State

Penitentiary in Angola, Louisiana.[2] On May 27, 1999, Robichaux was indicted in Orleans

Parish for aggravated rape and attempted second degree murder.[3]  The Louisiana Fourth

Circuit Court of Appeal summarized the testimony in relevant part as follows:

> The victim testified that she met the defendant in February 1998.  Several
> months later, she contacted him about doing some roofing work for her
> mother.  The victim spoke to the defendant frequently during the six or
> seven-month period the defendant worked on her mother's house.  The
> victim denied ever dating or becoming intimate with the defendant.  She
> stated that when he completed the work in December or January, she told
> him he was no longer welcome to visit her because she was seeing
> someone.  The victim related that on the morning of the attack, she stopped
> at a Broad Street grocery store after taking her children to school.  As she
> entered her van to leave the store, she noticed the defendant in the
> passenger seat of a gold vehicle with another male she did not recognize.
> The defendant approached her vehicle, jumped in, and told her to drive to
> his house because he needed to talk to her.  She was afraid of him, so she
> complied with his demand.  When they arrived at the defendant's house, he
> forced her out of the van, held her arms behind her, and threatened to break
> her neck if she did not accompany him.  Once inside the house, the
> defendant ordered her to remove her clothes.  When she failed to do so, the
> defendant ripped her clothes off.  During the course of the day, the
> defendant raped her three times, and beat her.  They continued to fight

---

[2]Rec. Doc. No. 1, Petition.

[3]St. Rec. Vol. 3 of 8, Indictment, 5/27/99.

throughout the day. At approximately 4:30 p.m., they heard police radios coming down the driveway, responding to a neighbor's complaint of loud noise. The defendant covered her mouth, and once again threatened to kill her if she made a sound. After the police left, she ran out the back door, but the defendant caught her by her hair, and dragged her back inside. He tried to break her neck. When he was unsuccessful, he began hitting her repeatedly in the head with the hammer. He continued hitting her body with the hammer, and crushed her right hand. The victim drifted in and out of consciousness as the defendant continued to kick, punch and torture her. At one point, the defendant sexually assaulted her with a metal clothes hanger. By the time the police returned, the defendant was gone. The victim told the police that the defendant tried to kill her. She answered some questions but was unable to tell the police all that happened to her. Following surgery she remained comatose for several days. The next thing she remembered was waking up in the hospital intensive care unit. She suffered several skull fractures, brain damage and perforations of her bladder and colon.

.    .    .

The defendant testified that he has two prior convictions--one in 1978 for burglary and another in 1979 for armed robbery. He stated that he and the victim were friends and lovers. The pair met when he did some roofing work for the victim's mother. On the morning of March 16, 1998, the victim came to the defendant's apartment to smoke crack cocaine. A fight erupted when the victim refused to pick up her children from school and the defendant flushed her cocaine down the toilet. When the victim tried to stop him, she fell into a bucket of nails and cut her legs. She followed the defendant into the bathroom, hitting him. She then locked herself in the bathroom to smoke more cocaine. In the meantime, the police came knocking on the door. He was afraid the [sic] answer the door because the victim had drugs. When he told her the police had come and gone, she exited the bathroom, and grabbed him by the testicles. In his weakened state, she began to pummel him with her fists, retaliating for his destroying her cocaine. She became increasingly abusive and aggressive, to the point that he picked up the hammer to ward off her attack. The defendant said that the victim fabricated the entire story because she has much to hide from the child protection agency and the man to whom she is engaged. He explained that the victim bruised herself as he tried to free

3

himself of her hold.  When he noticed the victim's injuries, he went to call an ambulance.  On the way back to his house, a neighbor told him the police were at his house, and talking about a homicide.  He was frightened so he did not go home.

State v. Robichaux, 788 So. 2d 458, 462-64 (La. App. 4th Cir. 2001).

Robichaux was tried before a twelve person jury on January 4, 2000.[4]  The jury found him not guilty of aggravated rape but guilty of attempted second degree murder.[5]  On January 14, 2000, the state trial court denied Robichaux's motion for a new trial and sentenced him to serve 35 years in prison.[6]

Robichaux, through appointed counsel, timely appealed his conviction to the Louisiana Fourth Circuit on January 20, 2000, raising two assignments of error:[7]  (1) The sentence was unconstitutionally excessive.  (2)  Counsel was ineffective for failure to preserve a challenge to the excessiveness of the sentence or to file a motion to reconsider the sentence.  On October 18, 2000, Robichaux filed a pro se supplemental brief raising

---

[4]St. Rec. Vol. 3 of 8, Trial Minutes, 1/4/00; Trial Minutes (revised page one); St. Rec. Vol. 6 of 8, Trial Transcript, 1/4/00.

[5]Id.

[6]St. Rec. Vol. 3 of 8, Sentencing Minutes, 1/14/00; St. Rec. Vol. 6 of 8, Sentencing Transcript, 1/14/00.

[7]St. Rec. Vol. 1 of 8, Notice of Appeal, 1/20/00; St. Rec. Vol. 6 of 8, Original Brief on Behalf of Bartholomess Robichaux, 8/14/00.

additional claims:[8]  (1)  The hammer was unlawfully obtained without a search warrant or probable cause.  (2)  The police withheld results of the rape test and testified falsely about its existence. (3)  The prosecutor knowingly used false testimony from the victim. (4)  The State suppressed or destroyed evidence that the victim's testimony was false, including a photograph, fingerprint results from the hammer and a drug screen test done on the victim before her surgery, thereby denying him effective cross-examination.  (5) He was beaten by police to testify that he touched the hammer.  (6)  Counsel was ineffective by (a) misrepresenting the incident as one of self-defense without discussing it with him and conspiring with the State to convict him, (b) failing to interview or subpoena witnesses and (c) failing to file pretrial motions and conduct discovery.

On March 14, 2001, the Louisiana Fourth Circuit affirmed Robichaux's conviction and sentence, finding that the issue of excessive sentence had been procedurally defaulted for lack of a contemporaneous objection and finding no merit in the remaining claims.[9]

---

[8] St. Rec. Vol. 6 of 8, Supplemental Brief, 10/18/00.

[9] State v. Robichaux, 788 So. 2d at 458; St. Rec. Vol. 6 of 8, 4th Cir. Opinion, 2000-KA-1234, 3/14/01. The court also addressed two errors patent which were deemed waived.

5

Thereafter, Robichaux filed a timely[10] writ application in the Louisiana Supreme Court, in which he raised the six pro se claims raised in his direct appeal.[11]   The application was treated as one seeking supervisory and/or remedial writs and was denied without reasons on March 15, 2002.[12]

On April 2, 2002, Robichaux filed an application for writ of certiorari in the United States Supreme Court, and it was placed on the docket on May 20, 2002.[13]  The application was denied without reasons on October 7, 2002.[14]

On October 18, 2002, Robichaux filed an application in the state trial court for post-conviction relief alleging two grounds for relief:[15] (1) The trial court lacked subject matter jurisdiction because of an improperly impaneled grand jury.  (2) There was racial discrimination in the selection of the grand jury foreperson.  After Robichaux filed

---

[10]The United States Court of Appeals for the Fifth Circuit has ruled that the application was timely (see the next section of this report and recommendation).

[11]St. Rec. Vol. 8 of 8, La. S. Ct. Writ Application, 01-KO-1178, 4/24/01; St. Rec. Vol. 1 of 8, La. S. Ct. Letter, 2001-KO-1178, 4/26/01.

[12]State v. Robichaux, 811 So. 2d 897 (La. 2002); St. Rec. Vol. 8 of 8, La. S. Ct. Order, 2001-KO-1178, 3/15/02.  The "KO" designates this as a "Pro Se Writ after Appeal to Court of Appeal."  See Louisiana Supreme Court Case Type Abbreviation Key at http://www.lasc.org/opinion_search.asp.

[13]St. Rec. Vol. 3 of 8, U.S. S. Ct. Letter, 01-10254, 5/21/02.

[14]Robichaux v. Louisiana, 537 U.S. 839 (2002); St. Rec. Vol. 3 of 8, U.S. S. Ct. Letter, 01-10254, 10/7/02.

[15]St. Rec. Vol. 1 of 8, Memorandum in Support of Petition for Post-Conviction Relief (Uniform Application attached thereto), 10/18/02.

numerous requests concerning the status of his petition,[16] the state trial court issued a letter on April 28, 2003, notifying Robichaux that the application was denied.

On May 8, 2003, Robichaux filed a writ application in the Louisiana Fourth Circuit, seeking review of that denial.[17]  The application was denied on May 30, 2003.[18] Robichaux then filed a  writ application to the Louisiana Supreme Court on June 19, 2003,[19] which was denied without reasons on June 18, 2004.[20]

## II.   FEDERAL HABEAS PETITION

On July 9, 2004, Robichaux filed a petition for federal habeas corpus relief that raises eight grounds for relief:[21]  (1)  The hammer was illegally obtained without a valid search warrant or probable cause.  (2)  The State withheld exculpatory material in the form of rape test results.  (3)  The prosecutor failed to correct the victim's testimony, which he knew to be false.  (4)  The State withheld or destroyed evidence that would have proved the victim's testimony was false.  (5)  Petitioner was forced by police under

---

[16]See St. Rec. Vol. 1 of 8, Motion for Status, 11/19/02; Motion for Status, 4/25/03; St. Rec. Vol. 3 of 8, Letter to Trial Court, 2/24/03; Letter to Trial Court, 2/27/03.

[17]St. Rec. Vol. 7 of 8, 4th Cir. Writ Application, 2003-K-0863, 5/8/03.

[18]St. Rec. Vol. 7 of 8, 4th Cir. Order, 2003-K-0863, 5/30/03.

[19]St. Rec. Vol. 8 of 8, La. S. Ct. Writ Application, 03-KH-1776, 6/19/03.

[20]State ex rel. Robichaux v. State, 876 So.2d 796 (La. 2004); St. Rec. Vol. 8 of 8, La. S. Ct. Order, 2003-KH-1776, 6/18/04.

[21]Rec. Doc. No. 1, Petition.

duress to testify as the State wanted. (6) Defense counsel was ineffective by presenting the case as one of self-defense, failing to question or subpoena witnesses and failing to file pretrial motions or conduct discovery. (7) Racial discrimination in the grand jury foreperson selection process. (8) The trial court lacked subject matter jurisdiction because of the improperly impaneled grand jury.

In its opposition to the petition, the State concedes that Robichaux has exhausted state court remedies and suggests that Robichaux's petition is timely.[22] The State also contends that five of the claims are without merit and that petitioner's claims concerning the grand jury foreperson and the lack of subject matter jurisdiction are procedurally barred from federal review.

In a prior report and recommendation, I found that the State's timeliness and finality calculations were erroneous and that this petition must be dismissed because it is time-barred. Record Doc. No. 7. The presiding district judge adopted my report and recommendation and entered judgment accordingly, dismissing the petition with prejudice as time-barred. Record Doc. Nos. 9, 10.

Robichaux appealed to the United States Court of Appeals for the Fifth Circuit. On November 14, 2005, the Fifth Circuit granted a certificate of appealability, found that petitioner's writ application to the Louisiana Supreme Court had been mailed timely,

---

[22]Rec. Doc. No. 5.

vacated the judgment and remanded the matter to this court "for consideration of the constitutional claims set forth in Robichaux's 28 U.S.C. § 2254 petition." Record Doc. No. 16.

## III.   STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254. The AEDPA went into effect on April 24, 1996[23] and applies to habeas petitions filed after that date. Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)). The AEDPA therefore applies to Robichaux's petition, which is deemed filed in this court on July 5, 2004.[24]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and

---

[23]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[24]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Robichaux's petition on July 9, 2004. Robichaux dated his signature on the petition on July 5, 2004, which is the earliest date on which he could have submitted it to prison officials for mailing.

must not be in "procedural default" on a claim.  Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

In the instant case, the Fifth Circuit has ruled that Robichaux's federal petition was timely.  The State concedes exhaustion of his claims but argues that the claims are without merit and that petitioner's claims concerning the grand jury foreperson and lack of subject matter jurisdiction are procedurally barred from federal review.  Pretermitting the State's procedural default argument and considering the Fifth Circuit's remand instructions, I will address petitioner's claims on their merits.

IV.   STANDARDS OF A MERITS REVIEW

Title 28 U.S.C. §§ 2254(d)(1) and (2), as amended by the AEDPA, contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings.  Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)).   The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing

evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'"  Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir. 2000)),  aff'd in part, rev'd in part on  other grounds, 532 U.S. 782 (2001); Hill, 210 F.3d at 485.  The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.   Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000); accord Penry, 532 U.S. at 792-93; Hill, 210 F.3d at 485.  "'A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'"  Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); accord Bell v.

Cone, 535 U.S. 685, 699 (2002).  Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable."  Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002).  The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner.  Price, 538 U.S. at 641.

V.     SEARCH AND SEIZURE (CLAIM NO. 1)

Robichaux argues that the search and seizure of the hammer was unconstitutional for lack of probable cause and lack of a warrant, in violation of his rights under the Fourth Amendment.  However, a petitioner's ability to obtain federal habeas corpus relief with regard to an alleged Fourth Amendment violation is greatly limited by the United States Supreme Court's decision in Stone v. Powell, 428 U.S. 465 (1976).

In Stone, the Supreme Court held "that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  Id. at 494.; accord Janecka v. Cockrell, 301 F.3d 316, 320 (5th Cir. 2002).  The Fifth Circuit

> has since interpreted an "opportunity for full and fair litigation" to mean just that:  "an opportunity."  If a state provides the processes whereby a defendant can obtain full and fair litigation of a fourth amendment claim,

> Stone v. Powell bars federal habeas corpus consideration of that claim whether or not the defendant employs those processes.

Id. (quoting Caver v. Alabama, 577 F.2d 1188, 1192 (5th Cir. 1978)).

The record indicates that Robichaux's counsel filed motions to suppress evidence, confession and identification on June 1, 1999.[25]  Although nothing in the record indicates that the state trial court ever ruled on the suppression motions, "absent additional allegations that state processes routinely or systematically are applied in such a way as to prevent the actual litigation of Fourth Amendment claims, mistakes that thwart the presentation of Fourth Amendment claims do not render the Stone bar inapplicable." Id. at 321.

Furthermore, Robichaux's counsel had the opportunity to object at trial to the State's introduction of the hammer into evidence.[26]  On direct appeal, the Louisiana Fourth Circuit Court of Appeal exhaustively examined petitioner's Fourth Amendment claim, Robichaux, 788 So. 2d at 468-69, and petitioner also presented the claim to the Louisiana Supreme Court in his writ application.  Because these opportunities satisfy the Stone standard that Robichaux have the opportunity for full and fair litigation of his

---

[25]St. Rec. Vol. 5 of 8 at pp. 311-18, Defense Motions dated 6/1/99.

[26]St. Rec. Vol. 6 of 8, Trial Transcript at p.176.

Fourth Amendment claim, his claim is barred from federal habeas review.  Stone, 428

U.S. at 494-95 n.37; Janecka, 301 F.3d at 320-21.

VI.    ALLEGEDLY EXCULPATORY MATERIAL (CLAIM NO. 2)

Robichaux argues that the State withheld exculpatory evidence in violation of his

Fifth Amendment due process rights, as interpreted by the United States Supreme Court

in Brady v. Maryland, 373 U.S. 83 (1963).  Specifically, he contends that Detective Brian

Baudier withheld rape test results at the April 8, 1999 preliminary hearing and denied

knowing of or having any medical tests done for rape.

> Brady requires the state to 'disclose evidence favorable to the accused that,
> if suppressed, would deprive the defendant of a fair trial.'  Under Brady, to
> establish that the state has breached this duty, the defendant must show that
> (1) the state withheld evidence, (2) the evidence is favorable to the accused,
> and (3) the evidence is material to guilt or punishment.

DiLosa v. Cain, 279 F.3d 259, 262 (5th Cir. 2002) (quoting United States v. Bagley, 473

U.S. 667, 675 (1985); citing Bagley, 473 U.S. at 674, 676)); accord Matthew v. Johnson,

201 F.3d 353, 360 (5th Cir. 2000) (citing Brady, 373 U.S. at 87).

Evidence withheld in violation of a prosecutor's obligation under Brady is material

"only if there is a reasonable probability that, had the evidence been disclosed to the

defense, the result of the proceeding would have been different.   A 'reasonable

probability' is a probability sufficient to undermine confidence in the outcome." United

14

States v. Weintraub, 871 F.2d 1257, 1261 (5th Cir. 1989) (quoting Bagley, 473 U.S. at

682).  As the United States Supreme Court explained:

> Bagley's touchstone of materiality is a "reasonable probability" of a
> different result, and the adjective is important.  The question is not whether
> the defendant would more likely than not have received a different verdict
> with the evidence, but whether in its absence he received a fair trial,
> understood as a trial resulting in a verdict worthy of confidence.   A
> "reasonable probability" of a different result is accordingly shown when the
> Government's evidentiary suppression "undermines confidence in the
> outcome of the trial."

Kyles v. Whitley, 514 U.S. 419, 434 (1995) (quoting Bagley, 473 U.S. at 678); accord

DiLosa, 279 F.3d at 263.

The record shows that Robichaux presented this argument to the Louisiana Fourth

Circuit Court of Appeal on direct appeal.  That court found that the State had provided

him with copies of all police reports and test results in response to his Motion for Bill of

Particulars and Discovery and Inspection.  Moreover, the Fourth Circuit found that Det.

Baudier had testified at the preliminary hearing that he did not yet know the rape test

results because the crime lab had not yet completed its testing.  The appellate court

further found that the State had elicited testimony at trial that the crime lab reported that

the rape test results had been negative.  Robichaux, 788 So. 2d at 469.

Robichaux has not shown a "reasonable probability" of a different result if the

allegedly withheld evidence had been produced.  The state appeal court's factual findings

concerning Det. Baudier's testimony at the preliminary hearing are supported by the transcript of that hearing and the court's findings concerning the rape test results introduced at trial are supported by the trial transcript.[27]  Finally, the Fourth Circuit held that petitioner suffered no prejudice because he was acquitted of the rape charge.

Because petitioner cannot demonstrate that the state court made an unreasonable determination of the facts in light of the evidence presented, federal habeas relief as to this claim is not warranted.

VII.   ALLEGED FALSE TESTIMONY (CLAIM NO. 3)

Robichaux argues that the State knowingly presented false testimony or allowed perjured testimony without correcting it.  He cites alleged inconsistencies between the victim's testimony and what she reportedly told the investigating officers after she became able to talk in the hospital about 10 days after the crime.

A state denies a criminal defendant due process when it knowingly uses perjured testimony at trial or allows untrue testimony to go uncorrected.  Giglio v. United States, 405 U.S. 150 (1972); Napue v. Illinois, 360 U.S. 264 (1959); Faulder v. Johnson, 81 F.3d 515, 519 (5th Cir. 1996).  To obtain relief, the defendant must show that (1) the testimony was actually false, (2) the State knew it was false and (3) the testimony was

---

[27]St. Rec. Vol. 1 of 8, Preliminary Hearing Transcript at pp. 7, 9; St. Rec. Vol. 6 of 8, Trial Transcript at pp. 89-90.

material.  Duncan v. Cockrell, No. 02-20901, 2003 WL 21545926, at*3 (5th Cir. July 3, 2003); Kirkpatrick v. Whitley, 992 F.2d 491, 497 (5th Cir. 1993).  False evidence is "material" only if there is any reasonable likelihood that it could have affected the jury's verdict.  Duncan, 2003 WL 21545926, at*3 (citing Nobles, 127 F.3d at 415).

Robichaux offered nothing to support his assertion that the State knew that the victim did not tell the truth at trial.  He has also failed to establish that, even if the victim testified falsely, the testimony affected the jury's decision in violation of due process.

The jury heard the conflicting testimony of Robichaux and the victim and the alleged inconsistencies between the victim's testimony and that of the investigating detectives.  Robichaux's counsel brought out those inconsistencies during his cross-examination.[28]  The jury nevertheless returned a guilty verdict.  The Fourth Circuit addressed this claim and noted that "[c]ross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested."  Robichaux, 788 So. 2d at 469 (citing Davis v. Alaska, 415 U.S. 308, 316 (1974)).  The guilty verdict itself is indicative of the credibility determinations made by the jury, and those determinations are entitled to deference on federal habeas corpus review.

---

[28]St. Rec. Vol. 6 of 8, Trial Transcript at pp. 70-71, 98-99, 125-26, 145-48.

For these reasons, Robichaux has failed to establish that the state courts' denial of relief on this claim was contrary to or an unreasonable application of Supreme Court precedent.  Petitioner is not entitled to relief on this claim.

VIII.  <u>ALLEGEDLY SUPPRESSED OR DESTROYED EVIDENCE (CLAIM NO. 4)</u>

In this claim, Robichaux contends that the State violated <u>Brady</u> by suppressing or destroying a photograph that purportedly showed him and the victim together, the drug screen test results done on the victim before surgery and the fingerprint test results done on the hammer.

Again, under <u>Brady</u>, to establish that the State has breached its duty to disclose evidence, the petitioner must show that (1) the State withheld evidence, (2) the evidence is favorable to the accused and (3) the evidence is material to guilt or punishment. <u>DiLosa</u>, 279 F.3d at 262 (citing <u>Bagley</u>, 473 U.S. at 674, 675, 676)); <u>Matthew</u>, 201 F.3d at 360 (citing <u>Brady</u>, 373 U.S. at 87).

As previously stated, evidence withheld in violation of a prosecutor's obligation under <u>Brady</u> is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome."  <u>Weintraub</u>, 871 F.2d at 1261 (quoting <u>Bagley</u>, 473 U.S. at 682).

> Bagley's touchstone of materiality is a "reasonable probability" of a different result, and the adjective is important. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A "reasonable probability" of a different result is accordingly shown when the Government's evidentiary suppression "undermines confidence in the outcome of the trial."

Kyles, 514 U.S. at 434 (quoting Bagley, 473 U.S. at 678); accord DiLosa, 279 F.3d at 263.

The Fourth Circuit Court of Appeal addressed these allegations on direct appeal. That court found that the State had subpoenaed all of the victim's medical records and introduced them at trial. Dr. Renatta Osterdock testified that, although the records indicated that blood testing was done, no drug test results were included in the records. However, the appellate court found nothing in the record to suggest that the State suppressed those results. Furthermore, the State itself elicited testimony concerning the absence of the test results and the lack of any explanation for the omission. Robichaux, 788 So. 2d at 470. Thus, the appeal court found that Robichaux cannot show that the State suppressed this evidence. In the absence of such a showing, there is no violation of Brady.

As to the picture, which allegedly had a romantic inscription on the back from the victim to Robichaux that would have undermined the credibility of her denial that the

two of them were lovers, the Fourth Circuit found that all the investigating officers who saw the photograph testified that they could not recall seeing any inscription on the back. The Fourth Circuit further found that the photograph was lost at some point before trial. Both the victim and the petitioner testified concerning the inscription, with the victim stating that it said nothing more than "from your friend."  As the appeal court held, the jury chose to credit the victim's testimony over that of Robichaux.  Id.  Thus, even if the State "suppressed" the photograph, petitioner failed to show that the evidence would have been favorable or that there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.

Finally, concerning the fingerprint testing on the hammer, the Fourth Circuit found that Robichaux had correctly pointed out that the tests were negative.  However, the appellate court found that the negative results "are of no moment, inasmuch as the defendant admitted arming himself with the hammer to fend off the victim's alleged retaliatory attack."  Id.  Again, even if the State "suppressed" the fingerprint results, petitioner failed to show that there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.

For these reasons, Robichaux has failed to establish that the state courts' denial of relief on this claim was contrary to or an unreasonable application of Supreme Court precedent.  Petitioner is not entitled to relief on this claim.

IX.    RIGHT AGAINST SELF-INCRIMINATION (CLAIM NO. 5)

Robichaux now contends that he never touched the hammer and did not beat the victim.  He alleges that his sworn testimony concerning the hammer "was the result of a secret and brutal interrogation, and [he] was told that he had better take the stand and say whatever they tell him to say," in violation of his Fifth Amendment right against self-incrimination.  Petition, Record Doc. No. 1, at p.18.  Petitioner presented this claim to the Fourth Circuit on direct appeal.

Robichaux has presented no evidence to support his self-serving allegation that he was subject to a secret and brutal interrogation and was coerced into incriminating himself.  The Fourth Circuit found

> nothing in the record to support these allegations.  Although the defendant claims his trial testimony was inculpatory, it was not.  To the contrary, he related a set of circumstances and sequence of events clearly intended to exculpate him.  In fact, he went as far as claiming he acted in self-defense.

Robichaux, 788 So. 2d at 470.  The jury weighed the credibility of Robichaux's testimony that he acted in self-defense against the credibility of the victim's testimony, and obviously believed the victim.

Robichaux has failed to establish that the state courts' denial of relief on this claim was contrary to or an unreasonable application of Supreme Court precedent.  Petitioner is not entitled to relief on this claim.

21

X.      INEFFECTIVE ASSISTANCE OF COUNSEL (CLAIM NO. 6)

Robichaux argues that his trial counsel was unconstitutionally ineffective for presenting a defense based on self-defense and for failing to talk to petitioner or see him before trial, do any pretrial investigation, interview or subpoena witnesses, file discovery motions or a motion to quash the indictment and have any pretrial motions argued. Robichaux raised some of these claims in his direct appeal.

The issue of effective assistance of counsel is a mixed question of law and fact. Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994).  Thus, the question before this court is whether the state courts' denial of relief was contrary to or an unreasonable application of Strickland v. Washington, 466 U.S. 668 (1984), in which the Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel.

In Strickland, the court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness."  Id. at 687-88. Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; accord United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999).  The Supreme Court defined a reasonable probability as "a probability sufficient to undermine confidence in the outcome."  Id.

22

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive <u>Strickland</u> standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.  <u>Kimler</u>, 167 F.3d at 893.  A federal habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.'  But it is not enough, under <u>Strickland</u>, 'that the errors had some conceivable effect on the outcome of the proceeding.'"  <u>Motley</u>, 18 F.3d at 1226 (quoting <u>Strickland</u>, 466 U.S. at 693).

On habeas review, scrutiny of counsel's performance "must be highly deferential," and the court will "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance."  <u>Moore v. Johnson</u>, 194 F.3d 586, 591 (5th Cir. 1999) (citing <u>Strickland</u>, 466 U.S. at 689-90); <u>accord</u> <u>Bell</u>, 535 U.S. at 702.  Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise. <u>Strickland</u>, 466 U.S. at 689; <u>Moore</u>, 194 F.3d at 591.

In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct and to evaluate the conduct from counsel's perspective at the time of the proceeding.  <u>Strickland</u>, 466 U.S. at 689; <u>Neal</u>, 286 F.3d at 236-37; <u>Clark v. Johnson</u>, 227 F.3d 273, 282-83 (5th Cir. 2000).  Federal courts have consistently

recognized that tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance.  Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999).

Petitioner's contention that his defense counsel failed to file any pretrial motions or conduct discovery is factually erroneous.  The Louisiana Fourth Circuit Court of Appeal held that the State supplied defense counsel with copies of all police reports and testing results in response to a motion for bill of particulars and discovery and inspection. In addition, the record contains pretrial motions to suppress confession, evidence and identification.  Although nothing in the record indicates that the state trial court ever ruled on these motions, Robichaux suffered no prejudice.  There was no confession, line-up or photographic line-up.  The victim identified Robichaux as her attacker to the police officers who arrived at the scene and again when she was questioned by detectives at the hospital.  Neighbors provided a description of him and his clothing.  As discussed above, petitioner had the opportunity to litigate fully the constitutionality of the search and seizure of the hammer, and the Fourth Circuit specifically held that the seizure was constitutional under the plain view exception to the Fourth Amendment's warrant requirement.  Robichaux, 788 So. 2d at 468-69.  Robichaux has not demonstrated a reasonable probability that the result of the proceeding would have been different had the motions been argued.

Robichaux further contends that his counsel rendered ineffective assistance because counsel presented a defense of self-defense. This is a trial strategy decision, subject to the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 690.

Robichaux testified repeatedly that the victim attacked him first and that he only hit her with the hammer after she had grabbed his testicles and he could not loosen her hold on him. The Fourth Circuit noted the heavy weight of the evidence of his guilt, including the 911 tape of a neighbor stating that Robichaux had been beating the victim and she had been screaming for four hours, the juvenile who flagged down the police officers and alerted them to trouble in Robichaux's apartment, the blood inside and outside his apartment, the human blood on his clothes and on the hammer found inside his apartment, the victim's immediate identification of petitioner as her attacker at the scene of the crime and her later identification of him at the hospital, the description of him supplied to the police by his neighbors, his flight and ultimate apprehension based on those identifications, the medical evidence, the victim's testimony and Robichaux's own admission at trial that he hit the victim with the hammer. Given the considerable evidence that petitioner hit the victim in the head with the hammer, the defense of self-defense was objectively reasonable and, in the circumstances facing counsel at the time, a sound decision that will not be disturbed on habeas review.

Robichaux next argues that his counsel was ineffective because counsel allegedly did not talk to petitioner or see him before trial and did not do any pretrial investigation. Petitioner has set forth nothing more than unsubstantiated theories. He has wholly failed to establish unreasonable strategy by his counsel as to these claims.

First, the appellate record includes two letters from Robichaux to the victim, in which petitioner mentioned aspects of his attorney's pretrial preparation. In one letter, petitioner stated that his attorney has a "key witness" against the victim but "[h]e doesn't want to tell me who" and "[h]e said something about your medical report."[29]  In the second letter, Robichaux said that one of his attorney's investigators came to see him, that "I did not like what he had to say about us" and that the investigator had "talked to men and women" who knew about petitioner's relationship with the victim.[30]  These contemporaneous assertions contradict petitioner's current argument that his attorney neither saw him nor did any pretrial investigation.

Second, there were no witnesses to the crime other than the victim and the defendant. Robichaux's counsel received copies of all police reports and test results before trial. Given the substantial evidence that Robichaux had hit the victim in the head

---

[29]St. Rec. Vol. 5 of 8, at p.255.

[30]St. Rec. Vol. 5 of 8, at p.258.

with the hammer, counsel's decision not to undertake further investigation was well within the realm of reasonable tactical action.

Robichaux also argues that counsel was ineffective because he failed to subpoena or call two witnesses, Lionel Sennette and petitioner's sister, Rhonda Robichaux. Petitioner states in his memorandum that these witnesses would have corroborated his testimony that he and the victim were lovers and had taken a trip to Houston together, and would have undermined the victim's testimony that they were never intimate.

Counsel's decision not to call Sennette or Rhonda Robichaux at trial was a defense strategy that cannot be second-guessed in hindsight.  Moreover, the testimony of Sennette and petitioner's sister would have been merely cumulative of petitioner's own. The Fourth Circuit found that, because neither of these persons was an eyewitness to the crime, the possibility that their testimony could have exculpated Robichaux was "extremely remote," given the weight of the evidence of his guilt.  Robichaux, 788 So. 2d at 467-68.  Thus, there was no reasonable probability that, but for counsel's failure to call these witnesses, the result of the proceeding would have been different.

Furthermore, "[c]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." Graves v. Cockrell, 351 F.3d 143, 156 (5th Cir. 2003) (quotation omitted).  When the only evidence of an

uncalled witness's testimony comes from the defendant, federal courts are reluctant to find ineffective assistance on habeas review.  Schwander v. Blackburn, 750 F.2d 494, 500 (5th Cir. 1985).  Thus, counsel's failure to call witnesses to support a meritless defense was not deficient or prejudicial.

For these reasons, Robichaux has failed to establish that counsel's performance was constitutionally ineffective.  The state courts' denial of relief was not contrary to or an unreasonable application of Strickland.  Robichaux's claims are meritless and he is not entitled to habeas corpus relief.

## XI.   SELECTION OF GRAND JURY FOREPERSON (CLAIM NOS. 7 AND 8)

Robichaux argues that the version of Louisiana Code of Criminal Procedure article 413(C) in effect when he was indicted on May 27, 1999, violated his due process and equal protection rights under the Fourteenth Amendment to the United States Constitution and his rights under the Louisiana Constitution.  Robichaux makes three arguments under this assignment of error:  (1) Article 413(C) was a special or local law that violated the Louisiana Constitution and deprived him of due process because it treated him differently from the other citizens within Louisiana. (2) The method of selecting the grand jury foreperson was susceptible to race and gender discrimination because the foreperson of his grand jury was hand-picked by the judge.  (3) The indictment failed to charge an offense because the grand jury was unconstitutionally

impaneled and therefore the trial court lacked subject matter jurisdiction to prosecute him.

As to petitioner's argument that Article 413(C) violated the Louisiana Constitution, a federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law." Wilkerson v. Whitley, 16 F.3d 64, 67 (5th Cir. 1994) (quotation omitted).   This court's analysis focuses on due process considerations, and due process requires that the court grant the writ only when the errors of the state court make the underlying proceeding fundamentally unfair.  Neyland, 785 F.2d at 1293.  Thus, the court considers only Robichaux's arguments based on federal constitutional law.

Article 413(C), as it was in effect when Robichaux was indicted, provided:

In the parish of Orleans, the court shall select twelve persons plus a first and second alternate for a total of fourteen persons from the grand jury venire, who shall constitute the grand jury. The court shall thereupon select one of the jurors to serve as foreman.

La. Code Crim. Proc. art. 413(C) (emphasis added) (prior to repeal by Acts 2001, No. 281, §§ 1, 2).  Thus, under the law in effect in Louisiana in 1999, a criminal district court judge selected the foreperson of the grand jury after the grand jury had been impaneled.

The Louisiana legislature repealed Article 413(C) in 2001, with the effect that selection of the foreperson in Orleans Parish since that date occurs in the same manner

as in the rest of Louisiana.[31]  The State concedes in the instant case that the grand jury foreperson selection process when Robichaux was indicted was subject to racially discriminatory abuse.  However, the State argues, the mere possibility of abuse is not sufficient to quash an indictment or to prove discrimination.

"[T]o be entitled to habeas relief [in a case alleging unconstitutional grand jury selection,] a claimant is required to prove discrimination under the standards set out in the Supreme Court's cases."  Rideau v. Whitley, 237 F.3d 472, 484-85 (5th Cir. 2000) (emphasis added) (citing Rose v. Mitchell, 443 U.S. 545, 565 (1979)).  The Supreme Court in Campbell v. Louisiana, 523 U.S. 392, 396 (1998), emphasized that the criminal defendant must show, as a precondition to raising a third-party due process or equal protection challenge, that he suffered an "injury in fact" from the exclusion of African-Americans from the grand jury.  The Court explained:

> Regardless of his or her skin color, the accused suffers a significant injury in fact when the composition of the grand jury is tainted by racial discrimination.  Discrimination on the basis of race in the selection of members of a grand jury . . . strikes at the fundamental values of our judicial system because the grand jury is a central component of the criminal justice process.

Id. at 398 (quotation omitted).

---

[31]Some lower courts in Louisiana had already held, before the legislature acted, that Article 413(C) was unconstitutional under the Louisiana Constitution because it was a local law.  The Louisiana Supreme Court made the same ruling in 2003 concerning indictments that had been handed down in 1999.  State v. Dilosa, 848 So. 2d 546, 551 (La. 2003).

Furthermore, "[t]o assert the rights of those venirepersons who were excluded from serving on the grand jury in his case, [petitioner] must prove their exclusion was on account of intentional discrimination." Id.

In the instant case, Robichaux cannot establish any race or gender[32] discrimination in the selection of the foreperson of the grand jury that indicted him.  In connection with this claim, Robichaux has attached to his complaint copies of various records.  None of these exhibits is certified nor does petitioner state where he obtained any of them. Record Doc. No. 1, Petitioner's Exh. A in globo.

In support of his petition, Robichaux cites motion hearings that were held at the trial level in State v. Trainor, which was reported on appeal as State v. Fleming, 846 So. 2d 114 (La. App. 4th Cir. 2003).  The documents that Robichaux has attached to his petition and his argument in his memorandum echo the statistics introduced into evidence in Fleming, in which co-defendants Fleming and Trainor challenged their 1998 indictments on the basis that racial discrimination in the selection of grand jury forepersons in Orleans Parish violated their equal protection and due process rights under the United States Constitution.

---

[32]The United States Supreme Court ruled long ago that exclusion of women from a federal grand jury panel was unconstitutional.  Ballard v. United States, 329 U.S. 187, 195-96 (1946); see also J.E.B. v. Alabama ex rel. T.B., 511 U.S. 127 (1994) (gender-based peremptory challenges to petit jurors violate the Constitution).

The Fourth Circuit in <u>Fleming</u>, while acknowledging the potential for discriminatory abuse inherent in Louisiana Code of Criminal Procedure Article 413(C), ruled that the statistical evidence presented to the trial court concerning the race and gender makeup of the grand juries and jury forepersons from 1987 to 2000 (the same time period that Robichaux cites in his memorandum) failed to establish a prima facie case of discrimination because the data was incomplete.  <u>Id.</u> at 122.

Even assuming that the documents that Robichaux has submitted to this court were authentic and admissible, his statistics suffer from the same incompleteness, which

> make[s] it impossible to determine the disparity between the African Americans [sic] and female forepersons as compared to the African Americans and females in the voter registration population.  Moreover, as the State argues, it is quite possible that "the missing data could prove no disparity at all in the race and gender of the forepersons."  It is important to note that this is not a case in which there were no African American or female forepersons on the grand jury during the relevant period.  Rather, the record reflects (as shown in Defendants' chart from which the statistical data was derived) that the known statistical data showed there were ten African American and eleven female forepersons over the thirteen-year period.

<u>Id.</u> at 122.  Similarly, Robichaux's documents indicate that there were 11 African-American and 11 female forepersons selected over the same 13-year period. Record Doc. No. 1, Petitioner's Exh. A.

Because Robichaux cannot prove any discrimination, the grand jury was not unconstitutionally impaneled and the trial court was not deprived of subject matter

jurisdiction.  Accordingly, petitioner's claim that the grand jury was constitutionally defective lacks merit.

## **RECOMMENDATION**

It is therefore **RECOMMENDED** that the petition of Bartholomess Robichaux for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).


New Orleans, Louisiana, this 14th day of March, 2006.


JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE